UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| ANTHONY MALFATTI, | No. C 11-03142 LB |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC.; and BAC HOME LOANS SERVICING, LP., | [ECF No. 74] |
| Defendants. | |

**INTRODUCTION**

The remaining claim in this case is Plaintiff Anthony Malfatti's claim for unjust enrichment against Defendant Bank of America ("BOA"), which is the successor by merger to BAC Home Loans Servicing (formerly known as Countrywide Bank and referred to herein as "BAC"). Malfatti claimed that he sent $59,495 in mortgage payments to BAC based on BAC's representations that it was the creditor/owner of his mortgage, and BAC retained the funds even though it was not the creditor. *See* Complaint, ECF No. 1, at 4.[1] Malfatti wants the money back. BOA moves for summary judgment, arguing that Malfatti lacks standing, is judicially estopped from asserting his claim, lacks any factual basis for it, and cannot demonstrate damages. *See* Motion, ECF No. 74. Malfatti opposes summary judgment, arguing that BOA has not proven its case and is wrong about

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page number at the top of the document.

C 11-03142 LB (ORDER)

the estoppel and standing issues. Opp'n, ECF No. 85. For the reasons discussed below, the court **GRANTS** BOA's motion for summary judgment.

## STATEMENT

### I. UNDISPUTED FACTS

The payments in the lawsuit relate to three mortgage loans on two properties. First, in June 2007, Malfatti acquired a $469,000 loan from Countrywide Bank, FSB, secured by a deed of trust to property located at 9527 Granada Avenue, Oakland, CA 94605. Joint Statement of Undisputed Facts ("JSUF") #1, ECF No. 80 at 2. Second, in June 2007, Malfatti acquired a $164,464 home equity line of credit from Countrywide secured by a deed of trust to the Granada Avenue property. JSUF #2. Third, in March 2008, Malfatti took out a $116,000 loan secured by a deed of trust to properties located at 1650-1652 Fifth Street in Richmond, California. JSUF #3.[2]

Malfatti began making payments on the three loans in August 2007 and May 2008. JSUF #18. His loan payments totaled $59,495, which is the alleged unjust enrichment and the damages amount he requests. *See* JSUF #4, #12.

On April 27, 2009, Malfatti filed for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Northern District of California. JSUF #5. In the schedules filed with his bankruptcy petition, Malfatti represented that he possessed no contingent or unliquidated claims of any nature. JSUF #6. Malfatti listed his liabilities in his Chapter 7 bankruptcy petition. *See* JSUF #7. These included the debts owed to Countrywide Home Lending on his three loans in the total amount of $698,491.00. *Id.* The bankruptcy court discharged Malfatti's debts on August 6, 2009. JSUF #8.

In June 2011, Malfatti filed this lawsuit, and in or around July 2011, he stopped making payments on the loans. JSUF #13; *see* Complaint, ECF No. 1.

---

[2] Bank of America asks the court to take judicial notice of the three recorded deeds of trust securing the properties, as well as the docket, petition, and discharge order from Malfatti's Chapter 7 bankruptcy case. *See* BOA Request for Judicial Notice, ECF No. 75. These are public-record documents that support the facts in the JSUF. Malfatti does not object and the court may take notice of the public records at issue. *See* Fed. R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Accordingly, the court takes judicial notice of them.

C 11-03142 LB (ORDER)
2

## II. RELEVANT PROCEDURAL HISTORY

This suit was assigned first to one district judge, who dismissed without prejudice Malfatti's three claims against Mortgage Electronic Registrations for cancellation of deeds and his claim against BOA for constructive trust. *See* 11/29/11 Order, ECF No. 21. The case was transferred to another judge, who dismissed with prejudice the same claims in an amended complaint, leaving only the claim for unjust enrichment. *See* 2/10/12 Order Dismissing Claims, ECF No. 34 at 6. With the parties' consent, the case was assigned to the undersigned on April 16, 2012. 4/16/12 Order, ECF No. 41.

In November 2012, the court continued the trial date from April to September 2013 based on the parties' explanation that they needed additional time to resolve outstanding discovery disputes before they could prepare their summary judgment motions. *See* ECF Nos. 58-59. Neither party sought judicial resolution of any discovery dispute. *See generally* Docket.

On January 2, 2011, BOA filed its first motion for summary judgment. *See* ECF No. 60. Malfatti responded that he needed even more time to complete discovery. *See* ECF No. 67. The court granted his request for additional time, set a schedule for the additional discovery, and denied BOA's summary judgment motion without prejudice. *See* ECF No. 73. The revised scheduling order provided deadlines for Malfatti to request discovery and BOA to respond and produce it. *Id.* It also provided a deadline for the parties to file a joint letter seeking judicial resolution of any discovery disputes. *Id.* at 5. Malfatti did not object to BOA's subsequent discovery responses, and the parties did not bring any discovery disputes to the court's attention. *See, generally* Docket; JSUF #22-23.

On May 16, 2013, BOA filed its pending motion for summary judgment ("Motion"), ECF No. 74.

### ANALYSIS

Malfatti's claim for unjust enrichment is based on his allegations that BOA failed to transfer to his lender the amounts Malfatti owed to the lender on his real property loans. JSUF # 9. The loan payments that Malfatti identifies as the basis for his unjust enrichment claim are the loan payments that he believes should have been paid to the creditor/owner of the mortgage. JSUF # 10. In other

1  words, Malfatti does not claim the right to retain these payments. JSUF #11.

2  BOA moves for summary judgment on the following grounds: (1) Malfatti lacks standing
3  because he is asserting a claim that belongs to his lender or, alternatively, the Bankruptcy Trustee;
4  (2) judicial estoppel bars his claim; and (3) he lacks facts to support liability or damages. *See*
5  Motion at 7. Malfatti counters that (1) he has standing, (2), his Chapter 7 Bankruptcy does not bar
6  his claim, and (3) disputed issues of material fact preclude summary judgment. Opp'n at 2-3. The
7  court first addresses BOA's threshold standing and judicial estoppel arguments and then turns to the
8  merits of Malfatti's claim.

9  **I. STANDING AND JUDICIAL ESTOPPEL**

10 Standing is a jurisdictional requirement that cannot be waived and is properly addressed under
11 Rule 12(b)(1). *See United States v. Hays*, 515 U.S. 737, 742 (1995); *Chandler v. State Farm Mut.*
12 *Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The party asserting the claim has the burden of
13 establishing standing. *See Colwell v. Dept. of Health and Human Servs.*, 558 F.3d 1112, 1121 (9th
14 Cir. 2009). The standing doctrine encompasses constitutional requirements and prudential
15 considerations. *See Valley Forge Christian College v. Americans United for Separation of Church*
16 *& State, Inc.*, 454 U.S. 464, 471 (1982); *Sahni v. American Diversified Partners*, 83 F.3d 1054, 1057
17 (9th Cir. 1996).

18 From a constitutional perspective, Article III's case-or-controversy requirement requires the
19 following for each claim: (1) the party invoking federal jurisdiction must have suffered some actual
20 or threatened injury; (2) the injury must be fairly traceable to the challenged conduct; and (3) a
21 favorable decision would likely redress or prevent the injury. *See Friends of the Earth, Inc. v.*
22 *Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 180-81, 185 (2000); *Lujan v. Defenders of Wildlife*, 504
23 U.S. 555, 560–61 (1992); *Valley Forge Christian College,* 454 U.S. at 472; *Sahni*, 83 F.3d at 1057.

24 The prudential limitations on federal court jurisdiction require the following: (1) a party must
25 assert his own legal rights and interests, not those of others; (2) courts will not adjudicate
26 "generalized grievances;" and (3) a party's claims must fall within the zone of interests that is
27 protected or regulated by the statute or constitutional guarantee in question. *See Valley Forge*
28 *Christ. College,* 454 U.S. at 474–75; *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1122 (9th Cir. 2009).

**A. Whether Malfatti is Asserting the Claim of His Creditor**

BOA first argues that it is entitled to summary judgment because Malfatti suffered no injury and thus lacks standing. *See* Motion at 12-14. "Plaintiff's allegations that '[BOA] has not been sending any of plaintiff's payments to any actual creditor/owner of the mortgage' do not assert any actual harm suffered by Plaintiff, but rather attempt to state a claim for his lender." *Id.* at 13 (quoting Complaint ¶ 32). Malfatti does not directly respond to this argument. *See* Opp'n.

In support of its argument, BOA cites cases affirming the general rule that a party cannot enforce the legal rights of third parties. *See McCollum v. California Dep't of Corr. & Rehab.*, 647 F.3d 870, 879-80 (9th Cir. 2011) ("a litigant may assert only his own legal rights and interests and cannot rest a claim to relief on the legal rights or interests of third parties"); *Coal. of Clergy, Lawyers, & Professors v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002) (same); *Tileston v. Ullman*, 138 U.S. 44, 46 (1943) (same). But those cases do not dispose of the standing issue here. BOA provides no authority for the proposition that a bank who retains loan payments that it has no right to (and instead belong to a different loan servicer) can defeat the borrower/lender's claim for lack of standing. Not only would that reward someone with no right to the payments, but also, it implicates Malfatti's obligations to the alleged third-party servicer. At least on this record, and in the absence of case law to the contrary, the court finds that Malfatti has standing. *See also* Restatement (First) of Restitution § 126 (1937); Restatement (Third) of Restitution & Unjust Enrichment § 64 (2011) ("When a claimant asserts a right to restitution from identifiable property in the hands of the recipient, it is not a defense to show that the claimant's rights to the property in question are inferior to those of a third person.").

**B. Post-Bankruptcy Standing**

BOA next argues that Malfatti lacks standing because he filed for Chapter 7 bankruptcy in 2009, which transferred his current right of action to the Chapter 7 bankruptcy trustee. Motion at 14-16. Malfatti responds that his current claims are "post-petition property" unaffected by the bankruptcy estate and that BOA provides no evidence that his unjust enrichment "claim herein existed, or that Malfatti knew about it, prior to the filing of the bankruptcy and the creation of the bankruptcy estate." Opp'n, ECF No. 85 at 9. Based on the record presented, the court grants summary

judgment to BOA to the extent Malfatti seeks to recoup his pre-petition payments, but denies BOA's motion to the extent Malfatti's claims are based on payments made after April 27, 2009.

The Bankruptcy Code provides that, with some exceptions, a bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In order to ensure a precise accounting, the debtor has an ongoing affirmative obligation to file and update a schedule of assets and liabilities to the bankruptcy court, including all pending and contingent claims. Fed. R. Bankr. P. 1007(b)(1); 11 U.S.C. §§ 521(a)(1), 541(a)(l); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001). At the conclusion of the bankruptcy proceedings, all assets properly scheduled by the debtor, and not otherwise administered by the trustee, are "abandoned to the debtor." 11 U.S.C. § 554(c).

Assets, including causes of action, that a debtor fails to properly disclose in bankruptcy remain the property of the bankruptcy estate even after the case is closed. *See Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004); *In re Lopez*, 283 B.R. 22, 28 (B.A.P. 9th Cir. 2002); *Cusano v. Klein*, 264 F.3d 936, 945-46 (9th Cir. 2001). In such cases, the bankruptcy trustee, as the representative of the estate, succeeds to the debtor's right to pursue causes of action that are the property of the estate. 11 U.S.C. § 323(a); *see In re Alcala*, 918 F.2d 99, 102 (9th Cir. 1990). "[A] chapter 7 trustee can . . . prosecute [an action], settle it, abandon it, or arrange for [the debtor] to prosecute it in exchange for the estate receiving a share of the proceeds." *See In re Lopez*, 283 B.R. at 28. Thus, "[w]hen a party fails to schedule a claim in bankruptcy, that claims remains the property of the bankruptcy estate even after discharge, and the debtor lacks standing to pursue it." *Holland & Knight, LLP v. Deatley*, 357 Fed. App'x 83, 85 (9th Cir. 2009) (citing *Dunmore*, 358 F.3d at 1112)).

In opposition to BOA's motion, Malfatti does not dispute that he did not disclose his current claim to the bankruptcy court. Instead, he contends that his unjust enrichment claim is not property of the bankruptcy estate because he did not file suit until more than two years after filing for bankruptcy. Opp'n, ECF No. 67 at 3-7. He also contends that summary judgment is not warranted because BOA has not presented evidence that his claim existed or he knew about it before filing for bankruptcy. *Id.* at 4. The court disagrees with Malfatti's analysis. A claim is not "post-petition

property" merely because the debtor did not file suit until after the bankruptcy case is closed. And the court's own research shows that the Bankruptcy Code broadly defines a pre-petition claim as a "right to payment, whether or nor such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A).

But BOA's argument fares no better. BOA contends that Malfatti lacks standing to bring his unjust enrichment claim because he failed to disclose it to the bankruptcy court. Motion at 14-16. BOA relies on state court precedent for the proposition that a debtor must disclose potential claims that accrue prior to filing for bankruptcy. *Id.* at 15 (citing *Bostanian v. Liberty Savings Bank, FSB*, 52 Cal. App. 4th 1075 (1997)). Relying on California law, BOA contends that Malfatti's claim accrued prior to his filing for Chapter 7 because he had been making payments and could have brought suit before filing for bankruptcy. *Id.* at 15-16 (relying on *Collins v. Los Angeles County*, 241 Cal. App. 2d 451, 454 (1966). Because Malfatti's cause of action accrued under California law, BOA contends Malfatti breached his duty to disclose the claim to the bankruptcy court and lacks standing to assert it now.

BOA's argument fails. First, state law determines the existence of a claim, but federal law determines when the claim arises for bankruptcy purposes. *In re Cool Fuel, Inc.*, 210 F.3d 999, 1006 (9th Cir. 2000); *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). Second, the Ninth Circuit has rejected the "accrual test" because it defines a claim more narrowly than 11 U.S.C. § 101(5)(A). *See In re Cool Fuel*, 210 F.3d at 999 (9th Cir. 2000) ("It is well-established that a claim is ripe as an allowable claim in a bankruptcy proceeding even if it is a cause of action that has not yet accrued."); *In re Hexcel Corp.*, 239 B.R. 564 (N.D. Cal. 1999); *see also Gottlieb v. Kest*, 141 Cal. App. 4th 110 (2006) (analyzing applicable federal precedent). Instead, federal courts apply different tests depending on the circumstances. *See, e.g., In re Storek*, 355 B.R. 187 (2006) (N.D. Cal. 2006) (discussing the accrual test, conduct test, relationship test and fair contemplation test and quoting the discussion in *Gottlieb*); *see also In re Zilog, Inc.*, 450 F.3d 996 (9th Cir. 2006) (applying the fair contemplation test in a discrimination case); *In re Cool Fuel*, 210 F.3d at 1006-07 (applying fair contemplation test in a tax case); *Hassanally v. Republic Bank (In re Hassanally)*, 208 B.R. 46,

53 (B.A.P. 9th Cir. 1997) (negligent construction claim). The strong trend of in-circuit authority suggests that the court should apply the fair contemplation test.

Regardless, Malfatti persuasively counters that he made most of the payments at issue after he filed for bankruptcy and after his bankruptcy was discharged, and thus, his claims to recover these was not subsumed within the bankruptcy estate. *See* Opp'n at 10. BOA argues that California courts have rejected the "so-called continuing violation doctrine, including as it applied to claims for unjust enrichment based on receipt of mortgage payments." Reply, ECF No. 86 at 9. But BOA relies on the California case of *Vaca v. Wachovia Mortgage Corporation*, which is inapposite. 198 Cal. App. 4th 737, 744-45 (2011). First, that case dealt with accrual for statute of limitations purposes – not for bankruptcy. Second, that court did not involve unjust enrichment of mortgage payments on a continuing basis, like Malfatti alleges. Instead, the court considered whether the "continuing wrong doctrine" postponed the limitations period of a fraud claim and the complaint "contain[ed] no allegations defendants did anything wrong after making the fraudulent mortgage loans in 2000 and 2001. *Id.* In contrast, Malfatti alleges that BOA wrongfully withheld separate mortgage payments both before and after his bankrtuptcy proceedings. In the absence of any persuasive argument for why Malfatti lacks standing, the court denies the motion for summary judgment on this basis as to the post-bankruptcy payments.

**C.  Judicial Estoppel**

BOA also makes the related argument that Malfatti failed to list his current claims on the schedules accompanying his Chapter 7 petition so that he is judicially estopped from asserting them now. Motion at 16-17. Malfatti does not specifically address BOA's argument, but seems to rely on the contention previously discussed that his claims did not arise until after bankruptcy. *See* Opp'n at 9-11

Federal law on judicial estoppel governs cases in federal courts regardless of whether they involve state law claims. *Johnson v. Or. Dep't of Human Res. Rehab. Div.*, 141 F.3d 1361, 1364 (9th Cir. 1998); *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 603 (9th Cir. 1996). Judicial estoppel is an equitable doctrine that prevents a party from benefitting by taking one position but then later seeking to benefit by taking a clearly inconsistent position. *Hamilton v. State*

*Farm Fire & Cas. Ins. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Judicial estoppel may be invoked by the court at its discretion. *Morris v. California*, 966 F.2d 448, 453 (9th Cir. 1991). It is intended to protect the integrity of the judicial process by preventing a litigant from "playing fast and loose with the courts." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).

In the bankruptcy context, where the plaintiff fails to disclose potential claims in his bankruptcy schedules and thereafter sues on them, judicial estoppel serves to protect the bankruptcy system, which depends on full and honest disclosure by debtors of all their assets. *Hamilton*, 270 F.3d at 785. When a debtor's disclosures are incomplete, they impair the interests of the creditors (who plan their actions in the bankruptcy proceeding based on information in the disclosures) and the bankruptcy court (which decides to approve a plan based on the information). *Id.*

Several factors help determine whether judicial estoppel applies. *Id.* at 782 (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)). "'First, a party's later position must be 'clearly inconsistent' with its earlier position.'" *Id.* (quoting *New Hampshire*, 532 U.S. at 750). In the bankruptcy context, this inconsistency may result "from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Id.* at 783. Second, the party must have "'succeeded in persuading a court to accept that party's earlier position.'" *Id.* at 782 (quoting *New Hampshire*, 532 U.S. at 750). "'Third, the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *Id.* (quoting *New Hampshire*, 532 U.S. at 751). These factors are not "'inflexible prerequisites or an exhaustive formula'" because "'[a]dditional considerations may inform the doctrine's application in specific factual contexts.'" *Id.* (quoting *New Hampshire*, 532 U.S. at 751). Another factor is whether the party to be estopped acted inadvertently or with an intent to defraud the court or creditors. *Johnson*, 141 F.3d at 1369 ("If incompatible positions are based not on chicanery, but only on inadvertence or mistake, judicial estoppel does not apply.").

Here, BOA argues that Malfatti took inconsistent positions by representing to the bankruptcy court that he had no contingent or unliquidated claims. Motion at 17; *see* JSUF #6. Based on these representations, the bankruptcy court discharged Malfatti's debts. Motion at 17; *see* JSUF # 10. BOA does not address the other judicial estoppel factors like whether Malfatti would derive an

1  unfair advantage if not estopped and whether he had an intent to defraud.

2  BOA's judicial estoppel argument invokes the same question as their standing argument. When
3  did Malfatti's claim arise for bankruptcy purposes? As discussed, BOA does not address any of the
4  cases discussing when claims arise for bankruptcy purposes. Nor does BOA discuss whether the
5  analysis is different for pre-petition and post-petition payments. *See In re Stroh*, 34 Fed. App'x 562,
6  565 (9th Cir. 2002) (bankruptcy court did not abuse its discretion in determining that Chapter 7
7  debtor's disclaimer of partnership interests in bankruptcy court proceedings barred subsequent
8  claims for either pre-petition or post-petition partnership earnings); *but see In re Ryerson*, 739 F.2d
9  1423, 1426 (9th Cir. 1984) (where, after filing his bankruptcy petition, debtor received payment
10  pursuant to the termination clause of his employment contract, the bankruptcy estate owned the
11  portion of the termination payment based on the debtor's pre-bankruptcy services but not the portion
12  based on post-bankruptcy services).

13  On this record, the court declines to invoke judicial estoppel. There is no evidence that Malfatti
14  acted intentionally. And given the court's ultimate disposition, Malfatti will not derive an unfair
15  advantage from his position in this litigation. The court denies this portion of BOA's motion
16  without prejudice because the court would reconsider the issue based on further briefing.

17  **II. MALFATTI'S UNJUST ENRICHMENT CLAIM**

18  Having rejected BOA's standing and judicial estoppel arguments, the court turns to the crux of
19  the dispute: the evidentiary support for Malfatti's unjust enrichment claim. BOA moves for
20  summary judgment, arguing that Malfatti has no evidence to support his allegations that his
21  payments were not applied to his loan or that he suffered damages. *See* Motion at 17-19. In
22  response, Malfatti argues that disputed issues of material fact preclude summary judgment.
23  *See* Opp'n at 4-9.

24  A motion for summary judgment should be granted if there is no genuine dispute of material fact
25  and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v.*
26  *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the
27  outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there
28  is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248-

49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion and identifying those portions of the pleadings depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex Corp.*, 477 U.S. at 325).

If the moving party meets its initial burden, the burden shifts to the non-moving party, which must go beyond the pleadings and submit admissible evidence supporting its claims or defenses and showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; *Nissan Fire*, 210 F.3d at 1103; *Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 323.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Courts in this district have generally[3] held that California law permits unjust enrichment claims,

---

[3] Some California courts have held that there is no stand alone cause of action for unjust enrichment; rather it is "a general principle, underlying various legal doctrines and remedies." *Herrington v. Johnson & Johnson Consumer Co., Inc.*, No. C 09-1597 CW, 2010 WL 3448531, at *13 (N.D.Cal. Sept. 1, 2010) (listing cases)); *see also McBride v. Boughton,* 123 Cal. App. 4th 379 (2004) ("Unjust enrichment is not a cause of action, however, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies. It is synonymous with restitution.") (internal citations and quotation marks omitted). Because BOA does not make this argument, the court need not address it.

1    in which "restitution may be awarded either (1) in lieu of breach of contract damages, where an
2    asserted contract is found to be unenforceable or ineffective, or (2) where the defendant obtained a
3    benefit from the plaintiff by fraud, duress, conversion, or similar conduct, but the plaintiff has
4    chosen not to sue in tort." *Oracle Corp. v. SAP AG,* No. C 07-1658 PJH, 2008 WL 5234260, at *8
5    (N.D. Cal. Dec. 15, 2008) (citing *McBride v. Boughton,* 123 Cal. App. 4th 379, 388 (2004)); *see also*
6    *Wolf v. Wells Fargo Bank, N.A.*, No. C11-01337 WHA, 2011 WL 4831208, at *8 (N.D. Cal. Oct. 12,
7    2011) ("Restitution [under an unjust enrichment theory] may be awarded in lieu of breach of
8    contract damages when the parties had an express contract, but it was procured by fraud or is
9    unenforceable or ineffective for some reason.") (citing *McBride* 123 Cal. App. 4th at 388). "To state
10   a claim for restitution, a plaintiff 'must plead receipt of a benefit and the unjust retention of the
11   benefit at the expense of another.'" *Walters v. Fid. Mortg. of Cal.*, No. 2:09-cv-3317 FCD/KJM,
12   2010 WL 1493131, at *12 (E.D. Cal. Apr. 14, 2010) (quoting *Lectrodryer v. SeoulBank*, 77 Cal.
13   App. 4th 723, 726 (2000)).

14   Here, Malfatti's theory of unjust enrichment is that BOA received his mortgage payments even
15   though it was not the actual servicer of his mortgages and retained the payments rather than passing
16   them along to the lender. *See* JSUF #9-10.  BOA meets its initial burden to demonstrate that
17   Malfatti's evidence is insufficient to establish two essential elements of his claim – unjust retention
18   and damages. *See High Tech Gays v. Def. Indus. Security Clearance Office*, 895 F.2d 563, 574 (9th
19   Cir. 1990).

20   As to the evidence of unjust enrichment, BOA first points out that Malfatti has no evidence to
21   support his allegations that his payments were not applied to his loans.  Motion at 18.  BOA served
22   an interrogatory on Malfatti requesting "all facts that support your allegation at paragraph 24 of the
23   COMPLAINT that 'BAC Home loans . . . is . . . not a mortgage servicer for any actual
24   creditor/owner of the mortgage." Richardson Decl. Ex. B, ECF No. 77-4 at 2.  Malfatti's response
25   provides no factual support other than that BOA is not identified in his loan documents and that
26   BOA has provided no evidence proving it is the servicer. *See id.* at 2-3.

27   Second, BOA points out that Malfatti has no evidence showing that BOA was not entitled to
28

C 11-03142 LB (ORDER)                                    12

1  receive his mortgage payments.[4]  *See* Motion at 18.  Another of BOA's interrogatories requested "all
2  facts that support your allegation . . . that [BOA] 'had no contract or agreement for collecting
3  payments with any actual creditor/owner of the mortgage.'"  Richardson Decl. Ex. B, ECF No. 77-4
4  at 3.  Malfatti's response just referenced the interrogatory response discussed above.  *Id.*

5  Third, BOA points to the same interrogatory responses to show that Malfatti lacks evidence that
6  any servicer other than BOA had the right to service the Properties.  *See* Motion at 18.  When asked
7  to "[i]dentify the entity that you believe to be the servicer" of the loans, Malfatti did not identify
8  another service and objected that the question was immaterial.  *See* Richardson Decl. Ex. B, ECF
9  No. 77-4 at 4.

10  All of this is in the context of the discovery that Bank of America produced to Plaintiff including
11  itemized loan histories documenting the date, amount, and application of each payment.  *See* Abbott
12  Decl., ECF No. 82, Exh. B.  Also, BOA stated in its interrogatory responses that "[p]rior to
13  November of 2012, the servicing rights belonged to Defendant Bank of America, N.A. and its
14  predecessor in interest, Countrywide."  *See* Abbott Decl. Ex. A, ECF No. 82-1 at 3-4.

15  As to evidence about damages, BOA argues that Malfatti lacks evidence that he was damaged
16  based on the undisputed fact that "Plaintiff is not sure if he is alleging that he has been harmed at all
17  by [BOA]."  JSUF # 17.

18  In sum, BOA has provided ample evidence to meet its initial burden of identifying the absence of
19  a triable issue of material fact.  Accordingly, the burden shifts to Malfatti to produce evidence
20  sufficient to create a genuine issue of material fact.  *See Nissan Fire & Marine Ins.*, 210 F.3d at
21  1102-03.

22  Malfatti fails to meet his burden.  The crux of Malfatti's argument is BOA's discovery responses
23  were evasive and that the evidence produced is insufficient.  *See* Opp'n at 5-8.  Malfatti's objection
24  to the sufficiency of the discovery responses is unpersuasive.  Malfatti filed this case in 2011 and
25  has had ample opportunity to conduct discovery.  Even after the close of discovery, when the first

---

[4] Malfatti did not dispute his lack of evidence on this point.  *See* Joint Statement of Undisputed Facts, ECF No. 70 at 5.

summary judgment motion was fully briefed, the court denied the motion and let Malfatti conduct even more discovery. *See* Order, ECF No. 73. He did not object to BOA's April 10, 2013 discovery responses and did not challenge their sufficiency with the court. JSUF #22-23. At this point, if the responses are insufficient, the blame lies with Malfatti.

Malfatti also argues that BOA has not provided him with "direct evidence of how it came to be the servicer, and on whose behalf it is acting as servicer." Opp'n at 6. But – as stated above – BOA's interrogatory responses say that "[p]rior to November of 2012, the servicing rights belonged to Defendant Bank of America, N.A. and its predecessor in interest, Countrywide." *See* Abbott Decl. Ex. A, ECF No. 82-1 at 3-4. Malfatti cites additional evidence that he contends is insufficient to prove that BOA was his loan servicer or that it ever "forward[ed] the payments to the person entitled to receive them." Opp'n at 8. But these purported insufficiencies do not constitutes a dispute of material fact that actually supports Malfatti's affirmative case. Essentially, Malfatti asks the court to infer evidence of liability based on purported weaknesses in the evidentiary record. While the court resolves reasonable inferences in Malfatti's favor, his failure to obtain discovery does not mean he can withstand summary judgment.

Finally, Malfatti in essence acknowledges that he has not identified any evidence to counter these facts. BOA proposed that Malfatti's lack of evidence should be an undisputed fact. *See* JSUF 14-16. In the initial summary judgment briefing, Malfatti stipulated that his lack of evidence was undisputed. *See* ECF No. 70. Here, Malfatti was ordered to provide legal citations to the evidence supporting his dispute of any proposed undisputed facts. *See* Order, ECF No. 79 at 2 ("If Plaintiff disputes a specific fact, the response shall include legal citations to the evidence supporting Plaintiff's position."). He did not do so.

Instead of identifying actual evidence, Malfatti disputes these facts "on the grounds that [BOA's] evidence is 'squishy,' and raises doubts about who [BOA] has been providing payments to." But Malfatti has the burden to provide the evidence and cannot resist summary judgment based on the

perceived weakness (or the squishiness) of his opponent's case.[5]  Accordingly, the court **GRANTS** BOA's motion for summary judgment.

## CONCLUSION

The court **GRANTS** Defendant's motion for summary judgment.  This disposes of ECF No. 74.

**IT IS SO ORDERED.**

Dated: June 20, 2013

_____
LAUREL BEELER
United States Magistrate Judge

UNITED STATES DISTRICT COURT
For the Northern District of California

---

[5] Malfatti seems to acknowledge that his claims against BOA are more of a fishing expedition and do not arise from any evidence that BOA has been unjustly enriched.  For example, he states that he "filed this action to determine who is the proper payee of the notes, and if the proper payee(s) was receiving his payments." Opp'n at 3.